
EOD
02/13/2014

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | | |
| **ROBERT LEE WEBB, JR.** § | | |
| xxx-xx-3806 § | Case No. 12-40350 | |
| and **KATHERYN C. WEBB** § | | |
| xxx-xx-8926 § | | |
| § | | |
| Debtors § | Chapter 7 | |
| ERIC TOMBAUGH § | | |
| and DENISE TOMBAUGH § | | |
| § | | |
| Plaintiffs § | | |
| § | | |
| v. § | Adversary No. 12-4080 | |
| § | | |
| ROBERT LEE WEBB, JR. § | | |
| § | | |
| Defendant § | | |

### MEMORANDUM OF DECISION GRANTING
### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT[1]

ON THIS DATE the Court considered the Motion for Partial Summary Judgment filed by the Plaintiffs, Eric and Denise Tombaugh ("Plaintiffs"), in the above-referenced adversary proceeding. Among other relief sought by the Plaintiffs' adversary complaint is a determination that the debt owed to them by the Defendant-Debtor, Robert Lee Webb, Jr., is excepted from the scope of his Chapter 7 discharge pursuant to 11 U.S.C. § 523(a)(6), which excepts from discharge a debt "for willful and malicious injury by the

---

[1] This Memorandum is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or other evidentiary doctrines applicable to the specific parties in this proceeding.

debtor to another entity or to the property of another entity." According to Plaintiffs, the factual findings issued by the 296th Judicial District Court in and for Collin County, Texas, that resulted in the assessment of sanctions against the Defendant for improperly initiating state court litigation against the Plaintiffs in that court, establish the elements necessary to render that sanctions debt non-dischargeable as a matter of law under § 523(a)(6). Upon due consideration of the pleadings, the proper summary judgment evidence submitted by the parties, and the relevant legal authorities, the Court finds that Plaintiffs have demonstrated that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law that the debt owed to them by the Defendant is non-dischargeable under § 523(a)(6).[2]

**Factual and Procedural Background**[3]

This case arises from a series of disputes between the residents of the Glenbrook Estates neighborhood in Lucas, Collin County, Texas, and their homeowners association, Glenbrook Owners Association, Inc. ("GOA"), with regard to the purported behavior of the Debtor-Defendant in this case, Robert Webb (the "Defendant"), and his spouse and co-Debtor, Kathryn Webb, who formerly were homeowners within that residential

---

[2] This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

[3] The facts presented are those which stand uncontested by and among the parties and are presented only as a general factual background to the legal claims asserted in the case. This section is not intended to resolve any disputed or contested facts.

neighborhood. One of the actions involved a pre-petition lawsuit by GOA against the Webbs (the "Glenbrook Litigation"),[4] which primarily sought injunctive relief to prevent the Debtors from engaging in purported nuisance activities in violation of the covenants of the Glenbrook development.

In 2007 the Glenbrook Litigation was originally tried before a jury, resulting in the jury verdict in favor of the GOA, and the entry of a final judgment on June 19, 2007 in favor of the GOA and against the Defendant and his spouse (the "2007 Judgment").[5] The 2007 Judgment permanently enjoined the Webbs from engaging in a number of specified activities. It further awarded civil damages in favor of the GOA and against the Webbs in the amount of $55,000 pursuant to §202.004(c) of the Texas Property Code and attorney's fees in the amount of $40,400, plus contingent appellate fees, with interest on the monetary amounts at 8.25%.[6] The Webbs subsequently appealed that 2007 Judgment to the Texas Court of Appeals for the Fifth District of Texas in Dallas. On October 1, 2009, the Court of Appeals issued an opinion which affirmed in part, reversed in part, and remanded the Glenbrook Litigation back to the trial court for further consideration.[7]

---

[4] This action was styled *Glenbrook Owners Association, Inc. v. Robert Webb and Kathy Webb*, pending as cause no. 219-591-06 before the 219th Judicial District Court of Collin County, Texas.

[5] Plaintiffs' Ex. 2. A certified copy of that judgment was filed with this Court on September 4, 2013 in response to this Court's "Order Directing Submission of Certified Copies of State Court Documents" [dkt # 33] entered on August 26, 2013 [the "Supplementation Order"].

[6] *Id.* at p. 5-6.

[7] Plaintiffs' Ex. 3. The jury findings regarding nuisance violations committed by the Webbs were sustained by the appellate court. A certified copy of the opinion was filed with this Court on September 4, 2013 in response to the Supplementation Order.

As the parties were preparing for a retrial of certain issues in the Glenbrook Litigation after remand, one of the Plaintiffs in this action, Denise Tombaugh, was designated as a witness for the GOA at the retrial. Prior to the retrial, on March 11, 2011, a new piece of litigation (the "Webb Litigation") was initiated in a different court against her and her husband, Eric Tombaugh,[8] by the Defendant and a related entity called RKW Family Farm, L.P.[9] This was not the first time that one of the Webbs had initiated litigation against their neighbors[10] and the Plaintiffs viewed this as merely the latest attempt by the Webbs to intimidate them from becoming involved in the retrial of the Glenbrook Litigation. The Plaintiffs also subsequently learned that Webb and RKW had filed a lis pendens against the Tombaughs' Glenbrook home.

---

[8] This action was styled *Robert Webb and RKW Family Farm, L.P. v. Eric Tombaugh and Denise Tombaugh,* pending as cause no. 296-01080-2011 before the 296th Judicial District Court of Collin County, Texas. See Defendant's Ex. 2.

[9] After the entry of the 2007 Judgment in the Glenbrook Litigation, the Webbs had conveyed their home in the Glenbrook development to this limited partnership which they controlled. The Webbs had thereafter moved out of Glenbrook and leased their former home to unrelated tenants.

[10] The initiation of the Glenbrook Litigation had triggered a number of retaliatory lawsuits by the Defendant and/or his spouse against the GOA and/or several of the neighborhood's residents. These included:

(1) *Robert Webb and Kathy Webb v. Eric Tombaugh and Denise Tombaugh, et.al.*, Cause No. 006-44106;

(2) *Kathy Webb v. Glenbrook Owners Association, Inc.*, Cause No. 004-01016-2008; and

(3) *Kathy Webb v. Kevin Voga, Jonathan Cox, Denise Tombaugh, et.al.*, Cause No. 219-00025-2008.

Each of these actions were ultimately dismissed or judgments summarily granted against the Webbs.

Rather than simply succumbing to the perceived intimidation tactic, the Tombaughs filed a plea to the jurisdiction in the Webb Litigation. They also filed a motion for sanctions against Webb and RKW and obtained an evidentiary hearing for the Court to consider the imposition of such sanctions. On January 6, 2012, the state court issued its "Second Amended Order Granting Defendants' Plea to the Jurisdiction and Granting Defendants' Motion for Sanctions" (the "Sanctions Order").[11] In its Sanctions Order, the trial court dismissed all of the claims asserted by Webb and RKW against the Tombaughs, directed an immediate release by Webb of the lis pendens filed against the Tombaughs' property, and awarded sanctions in favor of the Tombaughs against Webb in the amount of $19,250.00. Among the factual findings rendered by the trial court in support of the Sanctions Order were the following:

(1) the Webb Litigation was "brought for an improper purpose;"

(2) the claims brought by Webb in the Webb Litigation were "groundless, filed in bad faith, and brought for the purpose of harassment;"

(3) the Webb Litigation was filed shortly before the trial setting in the Glenbrook Litigation, a matter in which Denise Tombaugh was identified and scheduled to be a witness adverse to Robert Webb;

(4) Webb admitted that he was not the record owner of any property within the boundaries of the Glenbrook Owner's Association, and was not at the time of filing of the Webb Litigation, thereby demonstrating a lack of standing to assert his claims;

(5) the claims brought in the Webb Litigation were "substantially similar" to claims

---

[11] See attachment to Plaintiffs' Ex. 5. A certified copy of the Sanctions Order was filed with this Court on September 4, 2013 in response to the Supplementation Order.

previously asserted by Webb against Ms. Tombaugh in Cause No. 219-00025-2008, and should have been brought in that prior 2008 suit;

(6) the prior suit [219-00025-2008] was dismissed in part on grounds of res judicata, which Webb appealed, but such appeal was ultimately dismissed for want of prosecution;

(7) the filing of the Webb Litigation caused the Tombaughs to incur attorney's fees and costs to defend against the improper claims; and

(8) the assessment of sanctions in the amount of the Tombaughs' attorney's fees was a "necessary minimum step to deter such improper claim filing [by Webb] in the future."

The Debtor-Defendant appealed the Sanctions Order, but that appeal was stayed by the Defendant's filing of his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on February 10, 2012.[12] The Tombaughs, as Plaintiffs, subsequently initiated this adversary proceeding, seeking a determination that the January 6, 2012 Sanctions Order should be declared non-dischargeable under § 523(a)(6) as a "willful and malicious injury."[13]

---

[12] *See* ¶ 22 of Plaintiffs' First Amended Complaint.

[13] The Plaintiffs also brought causes of action for denial of the Defendant's discharge under various subsections of §727(a). Certain of those claims under §727(a)(3) and §727(a)(5) were dismissed by this Court pursuant to Rule 12(b)(6). *See Order Granting in Part and Denying in Part Defendant's Motion to Dismiss* entered in this cause on October 24, 2012 [dkt #13]. Claims under §727(a)(2) and §727(a)(4) remain outstanding at this time.

**Discussion**

*Summary Judgment Standard*

Plaintiffs bring their Motion for Partial Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56, which provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), *quoting* FED. R. CIV. P. 56(c).[14]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party asserting that a fact cannot be genuinely disputed must support that assertion by:

> (A) citing to particular parts of the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible

---

[14] Pursuant to the scheduling order issued in this adversary proceeding, motions for summary judgment are required to comply in format and content with Local District Court Rule CV-56 and such motions shall be decided under the procedures stated therein.

evidence to support the fact.

FED. R. CIV. P. 56(c). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended or a sham." *Bazan ex. rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original). "A fact is material only if its resolution would affect the outcome of the action. . . . " *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009).

The manner in which the required summary judgment showing can be made depends upon which party will bear the burden of persuasion at trial. If, as in this instance, the burden of persuasion rests on the moving party, "that party must support its motion with credible evidence – using any of the materials specified in Rule 56(c)– that would entitle it to a directed verdict if not contradicted at trial. *Celotex*, 477, U.S. at 331. Upon a *prima facie* showing by the movant of entitlement to judgment as a matter of law, the non-movant may not rest upon the mere allegations or denials in its pleadings, but rather must demonstrate in specific responsive pleadings the existence of specific facts constituting a genuine issue of material fact for which a trial is necessary. *Anderson,* 477 U.S. at 248-49 (*citing* FED. R. CIV. P. 56(e)). If the nonmoving party cannot muster sufficient evidence to demonstrate a genuine issue of material fact, a trial would be useless. The substantive law will identify which facts are material. *Id.*

To determine whether summary judgment is appropriate, the record presented is viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). However, if the evidence

demonstrating the need for trial "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. Thus, a non-movant must show more than a "mere disagreement" between the parties, *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993), or that there is merely "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Essentially, if a non-movant fails to set forth specific facts that present a triable issue, its claims should not survive summary judgment. *Giles v. Gen. Elec. Co.,* 245 F.3d 474, 494 (5th Cir. 2001).

In this case, the Plaintiffs bear the ultimate burden as to non-dischargeability. Therefore, the Plaintiffs are entitled to a summary judgment only if there exists no genuine issue of material fact as to each essential element under the non-dischargeability theories that are pled. The Plaintiffs assert that the doctrine of collateral estoppel resulting from the entry of the January 6, 2012 Sanctions Order provides the factual foundation necessary to support a finding of non-dischargeability. In order to properly assess this claim, the Court must first determine the applicability of the doctrine itself. If collateral estoppel applies, then any appropriate factual findings of the presiding state court should not be disturbed here, and the Court will apply those findings to the non-dischargeability elements. To the extent that an actual controversy does exist over a disputed fact, the finder of fact resolves any doubts and draws all reasonable inferences in favor of the nonmoving party. *U.S. ex rel. Longhi v. United States,* 575 F.3d 458 (5th Cir. 2009).

*Standards for Issue Preclusion (Collateral Estoppel).*

"Collateral estoppel or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Schiro v. Farley*, 510 U.S. 222, 232 (1994), *quoting Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *see also* RESTATEMENT (SECOND) OF JUDGMENTS §27 (1982) ["When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."]. "[P]arties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability [and] collateral estoppel can provide an alternate basis to satisfy the elements of §523(a)(6)." *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264 (5th Cir. 2005) (quotation marks and alterations omitted). The bankruptcy court retains exclusive jurisdiction, however, to determine whether a debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 285, n.11 (1991); *Simpson & Co. v. Shuler (In re Shuler)*, 722 F.2d 1253, 1255 (5th Cir. 1984).

Because the Sanctions Order was entered in a Texas state court, this Court applies the Texas law of issue preclusion. *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996). Collateral estoppel under Texas law prevents the re-litigation of identical issues of law or fact that were actually litigated and were essential to the final judgment in

a prior suit. *Texas Dept. of Public Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 817 (Tex. App. – Dallas 2012, no pet.). "The doctrine applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Eagle Properties, Ltd., v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1991) (*citing Tarter v. Metropolitan Sav. & Loan Ass'n*, 744 S.W. 926, 927 (Tex. 1988). Specifically, a party is collaterally estopped from raising an issue under Texas law when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 817 (Tex. App.– Dallas 2012, no pet.). "Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties." *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985). In the context of issue preclusion, "issue" and "fact" are interchangeable. The purpose of the reviewing court is to determine the specific facts brought that were already established through full and fair litigation.

It is important to note that the principles of issue preclusion may still be properly applied notwithstanding the fact that the Sanctions Order was subject to an appeal at the time of the bankruptcy filing. As is true under the federal application of preclusion

principles,[15] Texas law recognizes that "a judgment is final for the purposes of issue and claim preclusion despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo." *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 6 (Tex. 1986) [adopting RESTATEMENT (SECOND) OF JUDGMENTS § 13 cmt. f (1982)]. Thus, the final nature of the Sanctions Order is established and justifies the imposition of issue preclusion standards, notwithstanding the status of any appeal.

Otherwise, the Plaintiffs have successfully demonstrated fulfillment of the *Bonniwell* elements for the application of issue preclusion principles. Both parties to this action were involved in the Webb Litigation and were cast as adversaries. The Defendant opposed the Plaintiffs' request for sanctions. The 296th Judicial District Court in and for Collin County, Texas held an evidentiary hearing on the sanctions motion. That state court admitted evidence and heard argument from the parties. Thus, the sanctions issue "was raised, contested by the parties, submitted for determination by the court, and determined." *Keaty*, 397 F.3d at 272. On the basis of the evidence and argument presented, the state court issued specific factual findings as the foundation for issuing the Sanctions Order and the summary judgment evidence establishes the existence of the following factual findings arising from that adversarial context:

1.  the Webb Litigation initiated by Webb was "brought for an improper purpose;"

2.  the claims brought by Webb in the Webb Litigation were "groundless, filed

---

[15] *See, e.g.*, *Ruyle v. Continental Oil Co.*, 44 F.3d 837, 846 (10th Cir. 1994); *Kane v. Town of Harpswell (In re Kane)*, 254 F.3d 325, 328 (1st Cir. 2001); *Timmons v. Special Ins. Servs.*, 984 F.2d 997, 1008 (E.D. Tex. 1997).

        in bad faith, and brought for the purpose of harassment;"

3. the Webb Litigation was filed shortly before the trial setting in the Glenbrook Litigation, a matter in which Denise Tombaugh was identified and scheduled to be a witness adverse to Robert Webb;

4. Webb admitted that he was not the record owner of any property within the boundaries of the Glenbrook Owner's Association, and was not at the time of filing of the Webb Litigation, thereby demonstrating a lack of standing to assert his claims;

5. the claims brought in the Webb Litigation were "substantially similar" to claims previously asserted by Webb against Ms. Tombaugh in Cause No. 219-00025-2008, and should have been brought in that prior 2008 suit;

6. the prior suit [219-00025-2008] was dismissed in part on grounds of res judicata, which Webb appealed, but such appeal was ultimately dismissed for want of prosecution;

7. the filing of the Webb Litigation caused the Tombaughs to incur attorney's fees and costs to defend against the improper claims; and

8. the assessment of sanctions in the amount of the Tombaughs' attorney's fees was a "necessary minimum step to deter such improper claim filing [by Webb] in the future."

These findings arising from the fully and fairly litigated sanctions motion are sufficient to meet the requirement that an issue be "actually litigated" before it can be given binding effect and the summary judgment evidence sufficiently demonstrates that the determination of these factual issues in the state court action was essential to the imposition of the Sanctions Order. The remaining defense offered by the Defendant is that the foregoing factual findings rendered by the state court fall short of meeting the elements necessary to determine non-dischargeability under §523(a)(6). Thus, the

question arises as to whether such established facts are sufficient to prove a "willful and malicious injury" under §523(a)(6) in satisfaction of the first *Bonniwell* element.

*§523(a)(6)*

The United States Supreme Court has offered its opinion as to what types of debts Congress intended to except from discharge pursuant to §523(a)(6)[16]. In *Kawaauhau v. Geiger*, 523 U.S. 57, 118 (1998), the Supreme Court stated that:

> [T]he word "willful" in (a)(6) modifies the word "injury", indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury." Moreover..., the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." RESTATEMENT (SECOND) OF TORTS §8A, comment *a*, p. 15 (1964).

*Geiger* at 977. The Supreme Court concluded that negligent or reckless acts are not sufficient to establish that a resulting injury is "willful and malicious" and that, therefore, "debts arising from recklessly or negligently inflicted injuries do not fall within the

---

[16] Section 523(a)(6) of the Bankruptcy Code provides as follows:

(a) A discharge under Section 727 ... of this title does not discharge an individual debtor from any debt ...

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

compass of §523(a)(6)." *Geiger* at 978.

In *Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598 (5th Cir. 1998), the Fifth Circuit analyzed the *Geiger* ruling in an effort to articulate a methodology by which to distinguish between acts intended to cause injury as opposed to those merely leading to injury. The *Miller* court determined that a "willful ... injury" is established under §523(a)(6) when there exists either: (1) an objective substantial certainty of harm arising from a deliberate action or (2) there is a subjective motive to cause harm by the party taking a deliberate or intentional action. It further determined that the standard for determining the existence of a "willful" injury under *Geiger* had subsumed the Circuit's former standard for determining "malicious" conduct under §523(a)(6) [i.e. "without just cause or excuse"] and had eliminated any need to conduct a separate analysis on that malice element. *Id.* at 604-06.

The "objective substantial certainty" prong "is a recognition of the evidentiary reality that defendants in a bankruptcy context rarely admit any prior action was taken with the intent to cause harm to anyone. A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to cause harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009), *citing In re*

*Vollbracht*, 276 Fed. App'x. 360 (5th Cir. 2007).[17]

The Defendant asserts that the fact that the state court failed to make a specific finding regarding an "objective substantial certainty of harm" or "subjective motive to cause harm" precludes the entry of summary judgment on the §523(a)(6) claim. It is true, and really not surprising, that the state court issued no finding that precisely tracks *Miller's* language regarding interpretation of the §523(a)(6) intent requirements. It was not construing, nor even contemplating, §523(a)(6). It was applying Texas law regarding the imposition of sanctions under both Chapter 10 of the Texas Civil Practice and Remedies Code[18] and Rule 13 of the Texas Rules of Civil Procedure.[19] Yet, contrary to the Defendant's suggestions, the state court findings go directly to his subjective intent regarding the filing of the petition initiating the Webb Litigation, as well as the objective results of his intended actions.

Under the Texas sanctions law being applied by the state court in the prior action,

---

[17] "Injuries covered by §523(a)(6) are not limited to physical damage or destruction; harm to personal or property rights is also covered by §523(a)(6)." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 698-99 (Bankr. E.D. Tex. 2009).

[18] "To award sanctions under Chapter 10, it must be shown that: (1) the pleading or motion was brought for an improper purpose; (2) there were no grounds for the legal arguments advanced; _or_ (3) the factual allegations or denials lacked evidentiary support. Chapter 10 specifies that one of the aims for imposition of sanctions for the filing of frivolous or groundless pleadings is to deter repetition of the conduct or comparable conduct by others similarly situated. We construe the phrase improper purpose as the equivalent of bad faith." *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 183-84 (Tex. App. – Texarkana 2011, no pet.) (internal citations and quotations omitted and emphasis added).

[19] "Rule 13 authorizes the imposition of sanctions against an attorney, a represented party, or both, who filed a pleading that is either: (1) groundless and brought in bad faith; or (2) groundless and brought to harass." Id. at 183 (citing TEX. R. CIV. P. 13). "Groundless means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Harrison v. Harrison*, 363 S.W.3d 859, 863 (Tex. App. – Houston [14th Dist.] 2012, no pet.).

"[b]ad faith is not bad judgment or negligence; bad faith requires *conscious wrongdoing* for dishonest, discriminatory, or malicious purposes." *Clack v. Wollschlager,* 2013 WL 7083194, at *6 (Tex. App. – Eastland, Dec. 19, 2013, no pet.); *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 191 (Tex. App. – Texarkana 2011, no pet.) (emphasis added). That finding goes directly to the Defendant's subjective intent. The state court further found that the Defendant had initiated the state court lawsuit for the purpose of harassment. That is a finding that goes directly to the Defendant's state of mind in initiating the Webb Litigation against the Plaintiffs.

This case closely resembles the Fifth Circuit decision in *Keaty.* In *Keaty*, the wrongful conduct alleged against the debtor included intentional misrepresentations in the discovery process in a case that was itself filed knowingly without foundation and "crafted for the purpose of harassment." *Keaty*, 397 F.3d at 274. The Circuit determined that the debtor's actions in that case were "designed to deliberately prolong the proceedings unnecessarily" — an objective that was "substantially certain to injure [plaintiff], since deliberately and needlessly prolonging the proceedings would necessarily cause [plaintiff] financial injury." *Id*. As was true with the Louisiana statute construed in *Keaty*, the application of the sanctions standards recognized by Chapter 10 of the Texas Civil Practice and Remedies Code and Rule 13 of the Texas Rules of Civil Procedure essentially required the Collin County District Court to consider and to determine whether the Defendant acted with an objective substantial certainty of injury (to cause the Plaintiffs to incur attorney's fees and costs to defend against improper and

groundless claims) or a subjective motive to cause harm by taking a deliberate or intentional action (conscious wrongdoing by the Defendant for purpose of harassment). As in *Keaty*, this Court concludes that the injuries suffered by the Plaintiffs, as reflected in the Sanctions Order, were substantially certain to result from the Debtor's intentionally wrongful conduct and were performed with a subjective intent to cause harm to the Plaintiffs. Therefore, the sanctions award imposed against the Debtor-Defendant by the 296th Judicial District Court in and for Collin County, Texas should be declared non-dischargeable under §523(a)(6).

## Conclusion

For the reasons stated above, the Court concludes that the Plaintiffs, Eric Tombaugh and Denise Tombaugh, are entitled to a partial summary judgment that the debt of $19,250.00 owing to them by the Debtor-Defendant, Robert Lee Webb, Jr., arising from the Sanctions Order issued on January 6, 2012 by the 296th Judicial District Court in and for Collin County, Texas is non-dischargeable under the provisions of 11 U.S.C. §523(a)(6). An appropriate order will be entered which is consistent with this opinion.

Signed on 02/13/2014

_____
THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE